UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY L. VIOLA,  ID # 32238-160   )
McKean Federal Correctional   )
Institution - P.O. Box 8000   )
Bradford, Pa.  16701,   )
   )
   )
PLAINTIFF   )
   )
   )
   )
   -vs.-   )
   )
   )
UNITED STATES DEPARTMENT OF JUSTICE   )
Federal Bureau of Investigation   )
Records/Information Dissemination   )
Section - 170 Marcel Drive   )
Winchester, Va.  22602   )
ATTENTION:  Mr. David M. Hardy,   )
Section Chief   )
   )
and   )
   )
   )
UNITED STATES DEPARTMENT OF JUSTICE   )
Executive Offices for United States   )
Attorneys - Freedom of Information   )
& Privacy Staff   )
600 E Street, N.W.   )
Suite 7300, Bicentennial Building   )
Washington, D.C.  20530-0001   )
ATTENTION:  Ms. Susan Gerson,   )
Assistant Director   )
   )
   )
and   )
   )
   )
CUYAHOGA COUNTY MORTGAGE FRAUD TASK   )
FORCE, c/o Cuyahoga County Prosecutor   )
The Justice Center - Courts Tower   )
1200 Ontario Street   )
Cleveland, Ohio  44113   )
   )
   )
and   )
   )
   )
KATHRYN CLOVER, c/o counsel for Ms.   )
Clover, Jaye Schlacket, Esq.   )
55 Public Square, Suite 1600   )
Cleveland, Ohio  44113   )

Case No.  1:15-cv-242

**AMENDED COMPLAINT**

5 U.S.C. § 552, Freedom of
Information Act Complaint

JUDGE: Hon. Susan Paradise Baxter

INTRODUCTION

1.  Plaintiff, Anthony L. Viola, brings this action to compel the production of documents, pursuant to the Freedom of Information Act (FOIA).

2.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to

release information to the public upon request, unless one of nine statutory exemptions applies, 5 U.S.C. § 552(b).

3. In 2012 and 2013, the Plaintiff initiated Freedom of Information Act requests to the United States Department of Justice, Federal Bureau of Investigation and to the United States Department of Justice, Executive Offices for the United States Attorneys.

4. After receiving a FOIA request, an agency has 20 working days to respond, 5 U.S.C. § 552(a)(6)(A).

5. Within 45 days after an agency's determination letter, the requesting party may file an administrative appeal. After receiving a "final admini- strative response" from the federal agency, the requesting party may seek judicial review in federal court, 5 U.S.C. § 552(a)(4). If the agency takes longer than statutorily permitted to respond, the Freedom of Information Act provides that requesters may file a lawsuit pursuant to 5 U.S.C. § 552(a)(6)(C)(I).

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1331 and 28 U.S.C. § 1346.

7. Venue is proper in this court under 28 U.S.C. § 1391 and 5 U.S.C. § 552(a)(4)(B) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. The Plaintiff is housed at the McKean Federal Correctional Institution in Bradford, Pa., which is within this judicial district.

## PARTIES

8. Plaintiff Anthony L. Viola is housed at the McKean Federal Correctional Institution, prisoner ID # 32238-160, Bradford, Pa.

9. Defendant Federal Bureau of Investigation and Defendant Executive Offices for United States Attorneys, are federal agencies and part of the United States Department of Justice. The Department of Justice has in its possession and/or control over the records the Plaintiff has been seeking for many years.

- 2 -

10. Kathryn Clover is an agent of the federal government who offered substantial assistance to the U.S. Attorney's Office over several years. Ms. Clover assisted in the prosecution of her husband, Matthew Fairfield, on terrorism charges. Ms. Clover also testified in both state and federal court on behalf of the government. All properties at issue in the federal case were either purchased or managed by ms. Clover and, according to Ms. Clover's testimony in <u>State of Ohio v. Tony Viola</u>, she:

    a.   Attended meetings between prosecutors and other government witnesses, including lender executive Steve Newcombe.

    b.   Received financial support from the government, even though that support was not disclosed to the defense before the federal trial.

    c.   Took evidence home from the prosecutor's office for review.

    d.   Sent e mails, without copying her attorney, to AUSA Mark Bennett and state prosecutor Dan Kasaris.

Moreover, after Ms. Clover was caught lying at the second trial, Prosecutors Kasaris and Bennett huddled and decided to let Ms. Clover take the Fifth Amendment, while on the stand as a government witness.

According to Ms. Clover's former husband, Matthew Fairfield, and according to Ms. Clover's boyfriend, Bryan Butler, Ms. Clover and Prosecutor Kasaris had a four year long romantic relationship, including Prosecutor Kasaris sending e mails professing his "endless love" for Ms. Clover. Additional text messages and phone records confirm this romantic relationship.

11. The Cuyahoga County Mortgage Fraud Task Force was a federally-funded entity, consisting of numerous federal, state and local law enforcement agencies. Please see Press Release attached to Docket # 180, <u>USA v. Viola</u>, CR-08-506, for a full list of all agencies participating in this task force. Throughout the criminal case, evidence collected by the U.S. Attorney's Office and the FBI was forwarded to the Task Force.

STATEMENT OF FACTS

12. I was indicted three times by the joint task force and tried twice. Prosecutors allege I duped banks including JP Morgan into making 'no money down' mortgage loans. I was convicted in federal court, told the federal judge I was innocent at sentencing and was immediately thrown in jail to begin serving an 'above the guidelines' sentence of 12½ years, <u>USA v. Anthony</u>

- 3 -

<u>Viola</u>, CR-08-506, N.D. Ohio.

13. From jail, and without legal counsel, I affirmatively proved my innocence by winning the second trial -- on identical charges and prosecuted by the same prosecution team, <u>State of Ohio v. Anthony Viola</u>, CR-10-536877 and CR-10-543886. For a comparison between the two indictments, please see Docket # 445, attachment # 7, <u>USA v. Viola</u>, CR-08-506, N.D. Ohio. The indictment comparison confirms that the exact same properties were at issue in both cases and that the case was prosecuted by the same joint federal-state joint task force. The District Court's ruling on January 11, 2011, (hearing transcript pages 20-29), states that federal and state prosecutors were "working together."

14. The record from the state trial conclusively proves that an innocent man is in jail and that the Justice Department broke the law to "win" my case. The detailed record from two trials includes conclusive proof that the Federal Bureau of Investigation and the United States Attorney's Office in Cleveland committed the following misconduct during the prosecution of my case:

a. Prosecutors Mark Bennett and Dan Kasaris directed the Task Force's Office Manager, Dawn Pasela, to conduct a series of post-indictment interviews with me, all of which were secretly recorded, so that prosecutors could gain insight into defense trial preparation strategies. FBI Agent Jeff Kassouf testified under oath that "I or another investigator would listen" to secretly-recorded conversations, trial trans. p. 3678, <u>USA v. Viola</u>. However, those post-indictment recordings were an illegal intrusion into the Sixth Amendment right to counsel and those tapes have never been provided to the defense despite numerous efforts. Assistant U.S. Attorney Mark Bennett lied before trial, falsely stating that no such tapes with the Plaintiff's voice on them were in the possession of the task force, despite a specific written request for any recordings, Docket # 62, <u>USA v. Viola</u>.

b. I won the state trial on identical charges using evidence that prosecutors stated under oath did not exist, including an FBI 302 interview summary with a lender executive who testified at both trials. The 302 that was suppressed contained admissions that lender "account executives" were authorized to "waive" conditions and approve the very 'no money down' loans I supposedly tricked the bank into making. Agent Kassouf initially claimed that no such interview existed but, when presented with a copy of this 302 with his name on it, he then claimed he forgot to save his original, printed

out his only copy then mistakenly gave it to a defense attorney. The Most Honorable Daniel Gaul, who presided over the state trial and knows I'm innocent, did not believe this explanation, see Docket # 434, USA v. Viola, for Judge Gaul's comments concerning this clear Brady violation and see Docket # 443 for additional discussions of other Brady violations.

(c) Federal prosecutors and FBI Agent Kassouf shifted exculpatory evidence between different locations and jurisdictions to hide proof of my innocence. Additional misconduct included misinforming jurors in federal court concerning the legality to selling properties 'no money down' and knowingly utilizing perjured testimony in federal court that was recanted in state court (government witnesses McCarthy, Prusak and Clover). Meanwhile, computers seized by the FBI in televised "raids" were supposedly "lost" according to Agent Kassouf, trial trans. p. 3622, USA v. Viola.

(d) After I was convicted in federal court but prior to sentencing, and prior to the state trial, Dawn Pasela, the Task Force's Office Manager who was told to befriend me by prosecutors, grew increasingly concerned about her actions in this case, even blaming herself for my conviction. She was also aware of, and in some cases, involved with, the suppression of evidence. She was also concerned that her name was forged on the task force's evidence logs and records. Ms. Pasela bravely offered to testify at my second trial about her undercover spying operation and the whereabouts of supposedly "lost" or "missing" computers and other evidence. When prosecutors saw Dawn Pasela's name on my witness list, they obstructed justice and engaged in witness tampering, advising Dawn to "leave town" or she would face "federal prison" if she testified on my behalf. Ms. Pasela was too terrified to testify and contacted Judge Gaul to inform him she could not appear as a defense witness. Dawn Pasela was found dead in her apartment by her parents the next day, affidavits from the Pasela family and additional information about the Justice Department's unlawful "win at all costs" style of litigation is attached hereto as Exhibit A.

15. On April 17, 2013, I submitted a formal FOIA request to the FBI, seeking records covered under the FOIA statute, for use in an upcoming §2255 petition, to obtain additional evidence that the federal government possessed key evidence before the first trial that I obtained and used at the second trial. I also sought records relating to Ms. Pasela, including interviews with her by the FBI or any investigation of her death. The initial FOIA request also sought e mails sent by Kathryn Clover, along with other

other important information; a copy of the initial FOIA request is attached hereto as Exhibit B.

16. The FBI denied my FOIA request and refused to provide any documents. However, I appealed that decision (Appeal # AP-2013-04209, Request No. 1214544). On February 24, 2014, I received a letter from the Department of Justice's Office of Information Policy that stated "The FBI will process and send all releasable records to you directly, subject to any applicable fees." Please see Exhibit C.

17. I waited patiently for over one year then again wrote the FBI's FOIA office, requesting an update and a date certain when records would actually be produced. On June 13, 2014, the FBI's FOIA office claimed records processing was underway and requested that I agree in writing to pay the sum of $225.00 in duplicating fees upon release of the records. I agreed in writing to pay that amount, Exhibit D.

18. After waiting another year without receipt of any documents from the FBI, I once again wrote the FBI requesting a date certain for the release of records. I pointed out that I proved my innocence yet remain in jail and intended to utilize these documents as part of a §2255 filing and further prove that the Justice Department possessed proof of my innocence before the first trial. On August 21, 2015, the FBI responded, refusing to provide a date certain -- or any time frame at all -- as to when the records would be provided. Instead, the FBI requested that I reduce the scope of my request, Exhibit E.

19. Because the government continued to act in bad faith, an initial complaint was filed in this case, at which time partial record releases began. As of June, 2016, the time of this amended complaint, an unknown number of additional records are said to be forthcoming from the FBI.

20. in early 2014, an FOIA request was submitted to the Executive Offices for U.S. Attorneys, requesting key documents from the criminal matter, including e mails from AUSA Mark Bennett. The record in this case (Docket # 434 and 6th Circuit case # 14-3348, June, 2014 filing) already contain materially false statements Mr. Bennett made via e mail, including false statements concerning the existence of the aforementioned 302. Since witnesses who admitted lying in federal court, including Kathryn Clover) also have stated they e mailed Mark Bennett frequently, these public records were requested and should be made available.

21. On October 16, 2014, the Executive Offices for United States Attorneys acknowledged the FOIA request and assigned it a request number: FOIA-

- 6 -

2015-00132, Exhibit F. The letter further requested that I agree in writing to pay any required fees and provide an original signature, which was immediately done.

22. Because the October 16, 2014 letter requested up to nine months to provide the documents covered under the FOIA, I did not contact the office during that nine month period to allow adequate time for document production. Nine months passed without any documents being received so, in July, 2015, I requested an update and a date certain as to when documents responsive to the FOIA request were going to be produced.

23. On September 18, 2015, I received an envelop postmarked September 14, 2015 from the Executive Offices for United States Attorneys, Exhibit G.

24. Contained within the envelop postmarked September 14th was a letter dated February 6, 2015, claiming that I failed to pay the required $504 as advance payment to process this FOIA request, Exhibit H.

25. On September 19, 2015, I wrote to Ms. Susan Gerson, Executive Offices for United States Attorneys, informing her that her office was engaged in gamesmanship or incompetence, that I had never received any request for advance payment but that advance payment would be forwarded immediately to her attention, Exhibit I. The Justice Department, through its counsel Mr. Michael Colville, acknowledges that the payment of $504 was received. However, as of June, 2016, not a single piece of paper has been produced by the Executive Offices for United States Attorneys nor has a time frame for the production of documents been established.

26. Given the Justice Department's long-standing practice of breaking the law throughout this matter, and acting anyway it pleases with impunity, oversight by the District Court is required to compel complaince with the FOIA statute. Therefore, in September, 2015, this lawsuit was filed and, in June, 2016, amended.

27. After the initial complaint was filed, the FBI began producing documents, including a documents stating that the FBI and the U.S. Attorney's Office in Cleveland brought evidence collected by federal officials to the joint task force, Exhibit J. It is unclear if copies were retained by the FBI or if the Justice Department intends searching the Task Force's files for documents responsive to the FOIA request, thereby necessitating naming of the Task Force as a party to determine which records, e mails or voice recordings made by Ms. Pasela are stored or possessed by the Task Force.

28. After the filing of the initial complaint, Mr. Bryan Butler, the boyfriend of Ms. Kathryn Clover, contacted the Plaintiff through the

- 7 -

www.FreeTonyViola.com web site set up by friends and supporters to highlight the obvious injustice of jailing someone who affirmatively proved actual innocence and to continue gathering information about prosecutorial misconduct.  Mr. Butler informed the Plaintiff that Kathryn Clover discussed her long-term romantic relationship with Prosecutor Kasaris.  Moreover, Mr. Butler saw e mails from Prosecutor Kasaris professing his "endless love" for Ms. Clover, please see Exhibit K.

29.  Plaintiff wrote to Kathryn Clover, through her attorney Jaye Schlacket, requesting that Ms. Clover voluntarily turn over e mails bettwen herself and Prosecutor Mark bennett and between herself and Prosecutor Kasaris. Attorney Schlacket acknowledged the request but refused to provide any e mails, Exhibit L.

30.  Kathryn Clover possesses documents and e mails that are directly relevant to this matter and that constitute public records.  Given Ms. Clover's unique knowledge and possession of documents and e mails, she is an indispensable party in this matter and must be joined herein.

## CLAIM FOR RELIEF:  WRONGFUL WITHHOLDING OF RECORDS

31.  Plaintiff realleges and incorporates by reference all of the preceding paragraphs and exhibits.

32.  Defendants are improperly withholding records that are covered under the FOIA.

33.  The Justice Department has acted in bad faith throughout the criminal case and since FOIA requests have been made by:  (a)  Redacting publicly available information from documents provided;  (b)  Failing to provide recordings made by Dawn Pasela;  (c)  Unnecessarily delaying the receipt of records by gamesmanship;  (d)  Failing to provide the 302 interview with co-defendant Uri Gofman, who refused to testify against the Plaintiff at the second trial and who told federal prosecutors I'm innocent;  and (e)  Delaying the production of documents for so long that they may not be able to utilized in the criminal matter.

34.  Delays in this matter are prejudicial, since they allow the government to continue to hide its wrongdoing.  Since I already proved my innocence at a second trial, there is no need to speculate:  an innocent man is in jail.

35.  Pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 706(1), Plaintiff is entitled to de novo review by this Court of the defendant's responses to the Plaintiff's FOIA requests.

- 8 -

## PRAYER FOR RELIEF

Plaintiff respectfully requests that This Honorable Court will grant the following relief:

(1) Order the defendants to produce the records covered by the Freedom of Information Act requests listed in Exhibits B and F.

(2) Award the Plaintiff all costs pursuant to 5 U.S.C. § 552(a)(4)(E).

(3) Refer this case to the Office of Professional Responsibility because of the significant prosecutorial misconduct on the record and to properly investigate the actions by the government after Ms. Dawn Pasela was added to the witness list before the second trial.

(4) Grant any additional relief that This Honorable Court deems just and proper.

Thank you very much for your consideration.

Respectfully Submitted,

Anthony L. Viola # 32238-160
McKean FCI - P.o. Box 8000
Bradford, Pa.  16701

June 3, 2016

- 9 -

## CERTIFICATE OF SERVICE

I, Anthony L. Viola, hereby swear and affirm that I prepared Form USM-285 and forwarded those forms to the Clerk of Court in order to serve the new parties in this matter. In addition, I served the following individual, via regular U.S. mail, postage prepaid, on this 3rd day of June, 2016:

> Mr. Michael Colville
> Attorney for the United States
> U.S. Post Office & Courthouse
> 700 Grant Street
> Suite 4000
> Pittsburgh, Pa. 15219

> Respectfully Submitted,

> _____
> Anthony L. Viola

- 10 -

## INDEX OF EXHIBITS

EXHIBIT A
* News article from second trial
* Letter from Judge Gaul
* Affidavit from Mr. Pasela

EXHIBIT B
* FOIA Request - FBI

EXHIBIT C
* February 24, 2014 letter from the Justice Department

EXHIBIT D
* June 13, 2014 letter from the Justice Department

EXHIBIT E
* August 21, 2015 letter from the FBI

EXHIBIT F
* FOIA Request to Executive Offices, U.S. Attorneys
* October 28, 2014 letter from the Justice Department

EXHIBIT G
* Envelop, postmarked 9/14/15

EXHIBIT H
* February 6, 2015 letter from the Justice Department

EXHIBIT I
* September 19, 2015 letter

EXHIBIT J
* The FBI and U.S. Attorney turned over evidence to the joint task force

EXHIBIT K
* Written communications from Bryan Butler - Dan Kasaris's affair with Kathryn Clover

EXHIBIT L
* Letter from counsel for Kathryn Clover, Mr. Jaye Schlacket



**Everything Cleveland**

# Real estate broker Anthony Viola wins fight against prosecutors

Published: Thursday, April 26, 2012, 5:45 PM    Updated: Friday, April 27, 2012, 10:30 AM

    **Sarah Jane Tribble, The Plain Dealer**
By

(A previous version of this story used the wrong first name for Common Pleas Judge Daniel Gaul.)

CLEVELAND, Ohio -- A Cleveland Heights real estate broker, who was convicted in federal court of being a key figure in one of the nation's biggest mortgage fraud cases, won acquittals today on more than 50 similar charges in state court while representing himself.

The not guilty findings could aid **Tony Viola** in his appeal of his federal conviction, which he blames on ineffective representation by his then-defense lawyer, Jay Milano -- an accusation Milano disputes.



**View full size**
Tony Viola

After four weeks of testimony in Cuyahoga County Common Pleas Court, a 12-member jury deliberated over five days before delivering the not guilty verdicts for Viola, 46, president of Cleveland-based Realty Corporation of America.

State and federal prosecutors have described Viola and one-time associate, Uri Gofman, as the ringleaders in a scheme that defrauded banks out of $44 million in loans on 453 homes in Cuyahoga County.

Viola, who is serving a 12½ year prison term on federal charges, sent an e-mail after the verdict said the state's case against him contained "huge" holes.

"This is a mortgage fraud case, I am a real estate agent," Viola wrote in the e-mail. "I have never done a loan in my life, the prosecution had a tough time tying me to mortgage scams."

Dan Kasaris, an assistant county prosecutor on the case, described Viola's acquittal as "shocking."

The jury must have been sympathetic to Viola because he is already serving time, Kasaris said, adding that the jury was fooled by a "salesman, motivational



Exhibit "A" (p.1)    5/2/2012



## THE COURT OF COMMON PLEAS

COUNTY OF CUYAHOGA

JUSTICE CENTER

1200 ONTARIO STREET

CLEVELAND, OHIO 44113

DANIEL GAUL

Judge

(216) 443-8706

February 7, 2014

Mr. Anthony L. Viola
#32238160
Ashland Federal Correctional Institution
P.O. Box 6001
Ashland, KY 41105

Dear Tony,

I have been meaning to write since your correspondence. Hope you are doing well and that your health and spirits are holding up.

I recently spoke with Court Reporter Melissa Jones. I have authorized her to prepare that portion of your trial transcript that you requested. This will be provided to you by my court at no cost in the interest of justice.

Also, I spoke with Attorney Angelo Lonardo yesterday. He is representing the ex-Marine bank robber whom you have come into contact with (Walker). Anyway, Lonardo and I spoke about how fortunate Lonardo's client was to meet up with you at the institution.

Lonardo has a very high opinion of you which I share. Hope things work out for you and his client also.

Please let me know if I may be of further service.

Sincerely yours,

Daniel Gaul
Judge

DG/jc

Exhibit "A" p-2

## AFFIDAVIT OF EDWARD PASELA

STATE OF OHIO
COUNTY OF CUYAHOGA, SS:

I, Edward Pasela, depose and state under oath as follows:

1. I was the father of Dawn Pasela, who died on April 25, 2012.

2. For the last three years of her life, Dawn worked for the Cuyahoga County Mortgage Task Force, first as a contract employee and then as a county employee.

3. Dawn served in the capacity of office manager. One of her duties was to maintain the task force's files. After Dawn worked there for a while, she said she was concerned that things were being taken from the files and not returned. She also said some employees had signed her name when they took the files, and she feared they were hiding them from attorneys representing the people the task force was investigating. She particularly expressed concern about the way the cases against Anthony Viola and Susan Alt were being handled. Dawn showed us photos she had taken of file boxes haphazardly stacked in the hallway, which made them easily accessible to almost anyone.

4. Dawn also mentioned that some computers in the office had disappeared, and she couldn't find out why or where they went.

5. Although Dawn was not trained as an investigator, she was asked to go to a fund-raising event for Anthony Viola after he had been indicted and to secretly record what was said. She was also asked to write a check for Viola's defense fund so the prosecutors could determine at which bank the fund was being maintained. Dawn wondered about the propriety of these tactics.

6. Dawn continued to attend events sponsored by Viola's supporters and eventually began to sympathize with him because she felt that prosecutors were withholding documents that could help in his defense.

7. As her disenchantment over what was going on at the task force grew, Dawn began drinking excessively. This finally led to her termination. The task force later asked her to come in to discuss reinstatement, but she declined.

8. After the task force learned that Dawn had been subpoenaed to testify on Viola's behalf, two investigators came to her apartment to pressure her to reveal what Viola wanted her to testify about. She told us that the two men said that it would be wise for her to leave Ohio for a while and that if she testified for Viola she could end up in a federal prison. As a result, Dawn did not testify.

Exhibit "A" p. 3

9. Dawn was so frightened that the investigators might return that she moved into our house for 10 or more days and stopped drinking. She also parked her car in our garage so no one would see it. Dawn eventually began to feel stronger physically and emotionally and moved back to her apartment.

10. When we visited Dawn the day before she died, we could tell that she had started drinking again, and we urged her to stop.

11. Dawn was found dead the next day. The cause of death was listed as acute alcohol intoxication. She was only 26.

Further I sayeth naught.

*Edward Pasela*

Edward Pasela

Sworn and subscribed in my presence this 16ᵗʰ day of December, 20 14.

NOTARY PUBLIC

PAUL VARGO
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 1/25/17

PAUL VARGO
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 1/25/17

Exhibit "A" p. 4

Anthony L. Viola, # 32238160
Federal Correctional Institution
P.O. Box 6001
Ashland, Kentucky 41105

4/17/13

Records/Information Dissemination Section
Attention: FOIPA Request
170 Marcel Drive
Winchester, Va. 22602-4843

RE: Anthony L. Viola, ss ▮▮▮▮▮▮▮; DOB ▮▮▮-65, Sixth Circuit Case 12-3112;
Northern District of Ohio Case CR-506 (2008) <u>USA v. Anthony L. Viola</u>

Dear Sirs:

I am writing to request the following information as it relates to my case; my
personal information is captioned above:

(1) FBI agents seized trash from my personal residence for an extended period of time
throughout my case (2008-2012). Kindly forward reports about such trash collection,
copies of search warrants authorizing same and any correspondences relating to
trash collection; my home address is 3048 Meadowbrook, Cleveland Heights, Ohio 44118.

(2) I am requesting any FBI 302 statements that were made that mention my name and
prepared <u>after</u> March 1, 2011 (the start of the federal trial in this matter).
Specific requests include the FBI 302 of Uri Gofman and Jonathan Rich, both of whom
claim they mentioned my name during interviews. Of course, redact any personal
information of any witness you interviewed.

(3) Any FBI reports, review, investigation or written record about the not guilty verdict
in state court on identical charges prosecuted by the same joint task force,
including discussions with prosecutor Dan Kasaris or review of evidence presented
in state court, Case # CR-10-536877, <u>State of Ohio v. Viola.</u>

(4) Correspondences, investigations, transcripts or any information concerning Dawn
Pasela's undercover wired recordings of discussions with me. Ms. Pasela is
deceased (obituary enclosed) and she worked for the joint task force investigating
this case. FBI agent Jeff Kassouf claimed at trial to listen to all tapes made
by state prosecutors. Any reports, investigation or information concerning Ms.
Pasela's death is also requested.

(5) Copies of e mails from Kathryn Clover to the FBI that mention my name are also
being requested.

(6) Any and all information, written reports, summaries or letters in your files that
mention my name are hereby requested.

I trust you will search your Central Records System and contact Agent Kassouf
and let me know the costs of reproducing these documents. This information is sought
for personal, not commercial, use and all records will be found between October 1, 2008
through December 31, 2012. Thank you for your prompt attention to this important
request.

Respectfully Submitted,

Anthony L. Viola

CC: FBI Cleveland Office and FBI Headquarters

Exhibit "B"



**U.S. Department of Justice**

Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

February 24, 2014

Mr. Anthony L. Viola
Register No. 32238-160
Federal Correctional Institution
Post Office Box 6001
Ashland, KY 41105

Re:    Appeal No. AP-2013-04209
          Request No. 1214544
          ADW:CDT

**VIA: U.S. Mail**

Dear Mr. Viola:

You appealed from the action of the Federal Bureau of Investigation on your request for access to certain records concerning yourself.

After carefully considering your appeal, and as a result of discussions between FBI personnel and this Office, I am remanding your request for further processing of the responsive records. Although the FBI invoked Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(A), at the time your initial request was processed, that exemption is no longer applicable to withhold the records in full. Consequently, the FBI will process and send all releasable records to you directly, subject to any applicable fees. You may appeal any future adverse determination made by the FBI. If you would like to inquire about the status of this remand, please contact the FBI directly.

If you are dissatisfied with my action on your appeal, the Freedom of Information Act permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Sean R. O'Neill
Chief
Administrative Appeals Staff

By: *Anne D. Work*

Anne D. Work
Senior Counsel
Administrative Appeals Staff

Exhibit C



U.S. Department of Justice

Federal Bureau of Investigation
*Washington, D.C. 20535*

JUNE 13, 2014

MR. ANTHONY L. VIOLA
**32238160
FEDERAL CORRECTIONAL INSTITUTION MCKEAN
6975 ROUTE 59
LEWIS RUN, PA 16738

FOIPA Request No.: 1214544-000
Subject: VIOLA, ANTHONY L.

Dear Mr. Viola:

This is in reference to your Freedom of Information/Privacy Acts (FOIPA) request.

The Federal Bureau of Investigation (FBI) has located approximately 2,350 pages of records potentially responsive to the subject of your request. By DOJ regulation, the FBI notifies requesters when anticipated fees exceed $25.00.

Releases are made on CD if an alternative address is provided. Each CD contains approximately 500 reviewed pages per release. The 500 page estimate is based on our business practice of processing medium and large track cases in segments. DOJ regulations provide 100 pages or the cost equivalent ($10.00) free of charge. If all potentially responsive pages are released, you will owe $50.00 in duplication fees to receive the release on CD (4 CD's at $15.00 less $10.00). Should you request that the release be made in paper, you will owe $225.00 in duplication fees.

Please remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemption(s). Also, some information may not be responsive to your subject. Thus, the actual charges could be less. **No payment is required at this time.** However, you must notify us in writing within thirty (30) days from the date of this letter of your format decision (paper or CD) and your commitment to pay the estimated fee.

If we do not receive your format decision and/or commitment to pay within thirty (30) days of the date of this notification, your request will be closed. Include the FOIPA Request Number listed above in any communication regarding this matter.

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a smaller processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information. The FBI uses a three-queue processing system to fairly assign and process new requests. Requests track into one of the three queues depending on the number of responsive pages - 500 pages or less (small queue), 501 pages to 2500 pages (medium queue), or more than 2500 pages (large queue). Small queue cases usually require the least time to process. Please advise in writing, if you would like to discuss reducing the scope of your request, and your willingness to pay the estimated search and duplication costs indicated above. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Time. Mail your response to: Work Process Unit; Record Information/Dissemination Section; Records Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602. You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section

Exhibit D



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

August 21, 2015

MR. ANTHONY L. VIOLA
**32238-160
FEDERAL CORRECTIONAL INSTITUTION MCKEAN
UNIT E
POST OFFICE BOX 8000
BRADFORD, PA 16701

FOIPA Request No.: 1214544-000
Subject: VIOLA, ANTHONY L.
(APPEAL NO: 201304209)

Dear Mr. Viola:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). Currently, your request is in the "perfected backlog", where your request is waiting assignment to an analyst.

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a smaller processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Work Process Unit; Record Information/Dissemination Section; Records Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602.** You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

For questions, or to check the status of your request, visit the www.fbi.gov/foia website. The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Exhibit F

Anthony L. Viola   ID # 32238-160
McKean Federal Correctional Institution
P.O. Box 8000 - Unit E
Bradford, Pa.   16701

September 4, 2014

Executive Offices of the U.S. Attorney
600 E Street, NW
Room 7300
Washington, D.C.   20415

RE:   <u>FOIA REQUEST</u>

Dear Sirs:

I am respectfully requesting that you provide me with information concerning my criminal case or any matters involving me or my company. Kindly note the following information:

NAME:                    Anthony L. Viola
DATE OF BIRTH:           ███-1965
SOCIAL SECURITY #        ███████
CASE #                   CR-08-506, USA v. Viola, N.D. Ohio
AUSAs in the case:       John Siegel, Mark Bennett, Micah Alt and U.S.
                         Attorney Steve Dettelbach
USM #                    32238-160

I am willing to pay any and all reasonable copying charges or other costs to locate and produce this information.

Kindly acknowledge receipt of this information at your earliest convenience.   Thank you very much.

Respectfully,

Anthony L. Viola

Exhibit F (p.1)



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.*
*Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 252-6020    FAX: 252-6047    (www.usdoj.gov/usao)*

October 28, 2014

Anthony Viola
#32238-160
McKean FCI
P.O. BOX 8000
Bradford, Pennsylvania   16701

       Re: Request Number: <u>FOIA-2015-00132</u>
       Date of Receipt: <u>October 16, 2014</u>
       Subject of Request: <u>Self (AI)/OHN</u>

    The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request.  It has been assigned the above number. <u>Please give us this number if you write about your request.</u>   If we need additional information, we will contact you within two weeks.

    Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request).   Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

    EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions; for example, Project Requests usually take approximately nine months to process.   Requests for "all information about myself in criminal case files" are usually Project Requests.   If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

    By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver.   Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you.   Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free.   <u>Please do not send any payment at this time!</u>   If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees.   After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you.   Without such payment, your request file will be closed without further action.

                            Sincerely,

Exhibit F  P. 2

**U.S. Department of Justice**

Executive Office for United States Attorneys

*FOIA/DC*

*600 E St., NW*
*Rm. 7300 BICN*
*Washington D.C. 20530*

Official Business

US OFFICIAL MAIL
$300 Penalty
For Private Use

US POSTAGE
$00.485
09/14/2015
Mailed From 20536
Hasl9

Anthony Viola
#32238-160
FCI, P.O. Box 8000
Bradford, PA 16701

1670130560 B0SS

ExLiBit  G



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street. N.W.*
*Suite 7300. Bicentennial Building*
*Washington. DC 20530-0001*

*(202) 252-6020    FAX: 252-6047    (www.usdoj.gov/usao)*

February 6, 2015

Anthony Viola
#32238-160
McKean FCI
P.O. BOX 8000
Bradford, Pennsylvania 16701

Re: Request Number: <u>FOIA-2015-00132</u>
Date of Receipt: <u>October 16, 2014</u>
Subject of Request: <u>Self (AI)/OHN</u>

Dear Mr. Viola:

On December 11, 2014, we sent you a letter indicating an estimate of the fees that would be charged $504.00 for processing your Freedom of Information Act request. We gave you 30 days to respond with your advance payment. Since we did not receive the advance payment, your request file has been closed.

This is the final action on this above-numbered request. You may appeal this decision on this request by writing to the Office of Information Policy (OIP), United States Department of Justice, 1425 New York Avenue, N.W., Suite 11050, Washington, D.C. 20530-0001. Both the letter and envelope should be marked "FOIA Appeal." Your appeal must be received by OIP within 60 days from the date of this letter. If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

Susan B. Gerson
Acting Assistant Director

Exhibit    H

Anthony L. Viola   ID # 32238-160
McKean FCI - P.O. Box 8000
Bradford, Pa.   16701

September 19, 2015

Ms. Susan B. Gerson
Acting Assistant Director
Executive Offices for
United States Attorneys
600 E Street, N.W.
Suite 7300 - Bicentenial Building
Washington, DC   20530

RE:   FOIA-2015-00132 / Anthony L. Viola

Dear Ms. Gerson,

I recently received a letter from you indicating that my FOIA request was closed for nonpayment of fees in the amount of $504.00.  However, your letter dated February 6th, 2015 was mailed in an envelop postmarked September 14, 2015.  In addition, I never received any prior notice that any payment was required.

This letter is to inform you that $504 is being mailed to your personal attention and that I am requesting you process the FOIA request I made.

For your reference, I am enclosing:

(1)   A copy of my initial request
(2)   A copy of your letter dated February 6
(3)   An envelop from your office postmarked 9/14/15.

Thank you very much for promptly providing documents that the law requires.  You will be in receipt of the $504 within the next ten days.

Sincerely,

Tony Viola

Exhibit I



FD-302 (Rev. 10-6-95)



-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    04/06/2010

b6
b7C

On April 6, 2010, at 3:35pm, Special Agent [_____] accepted a box of documents which were being held at the United States Attorney's Office. The documents were originally provided by [_____] to Special Agent [_____] of Alcohol Tobacco and Firearms (ATF).

At 4:04 pm, SA [_____] delivered these documents to the Cuyahoga County Mortgage Fraud Task Force, for scanning and to be turned over for evidence.

b6
b7C

On March 16, 2010, these documents were brought to a meeting held at the United States Attorney's Office. Present at the meeting were SA [_____] and [_____] of the ATF, SA [_____] and Assistant United States Attorney [_____] The documents were placed in storage at the conclusion of this meeting.

b6
b7C

The documents turned over to the MFTF included [_____]

b6
b7C

Investigation on    04/06/2010    at  Cleveland, Ohio

File # 329E-CV-71645- 179                    Date dictated

by   SA [_____]

b6
b7C

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

CA238K01.302

Exhibit J

TRULINCS 23618055 - FELDMAN, DORON - Unit: MCK-E-A

---------------------------------------------------------------------------

FROM: Feldman, Debbie
TO: 23618055
SUBJECT: more from FB
DATE: 04/07/2016 11:36:07 PM

I was with Kat Clover.. I have knowledge of things she told me.. if I can help you let me know
And yes they slept together.. they were sleeping together when he prosecuted her ex husband..
Bryan Butler
Bryan
She told me a lot of stuff
I want to help you


TRULINCS 32238160 - VIOLA, ANTHONY L - Unit: MCK-E-A

---------------------------------------------------------------------------

>

3:13pm
Bryan Butler
Yes absolutely.. 513 557 1903


TRULINCS 32238160 - VIOLA, ANTHONY L - Unit: MCK-E-A

---------------------------------------------------------------------------

FROM: Wood, Melanie
TO: 32238160
SUBJECT: RE: Bryan's phone number
DATE: 04/10/2016 12:06:06 AM

Bryan Butler I was recently dating Kat Clover and yes she told me that her and Dan had been sleeping together since the trial where he prosecuted her ex husband Matt
Like · Reply · April 7 at 6:30pm

EXHIBIT H

**JAYE M. SCHLACHET**
55 PUBLIC SQUARE
SUITE 1300
CLEVELAND, OHIO 44113-1971
(216) 781-3434
FAX (216) 781-1749
EMAIL: JAYE@SCHLACHETLAW.COM

# MESSAGE – REPLY

☐ **URGENT**
☐ PLEASE RESPOND BY _____
☐ NO REPLY NECESSARY

TO: ANTHONY VIOLA

DATE: 5/16/16

SUBJECT:

MESSAGE:

Mr. Viola; I received your letter dated 5-7 and have forwarded it to Ms. Clover.

J Schlachet

RETAIN ONE COPY FOR YOUR RECORD.

Exhibit L